IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RANDY CORDLE,**

Plaintiff,

v.                                                                Civil Action No. 5:16-CV-18

**AMANDA SABATINO, LPN;
JIM RUBENSTEIN, Commission WVDOC;
KAREN PSZCZOLKOWSKI, Warden Northern
Correctional Facility; JAMES GREYHOUSE,
Northern Correctional Facility Staff;
C.O. MCGLOCHLIN, Northern Correctional
Facility Staff; RYAN ADAMS, Northern
Correctional Facility Staff; JANE DOE,
Nurse, Northern Correctional Facility
Staff; JANE DOE, Medical Servs. Coord, Northern
Correctional Facility Staff; DALE GRIFFITH,
Northern Correctional Facility Staff;
DAVID BALLARD, Warden; Mike
NEESE, Special Management Committee,
Mt. Olive Correctional Complex; CHERYL
CHANDLER, Special Management Committee,
Mt. Olive Correctional Complex;
SHERRILL SNYDER, Special Management
Committee, Mr. Olive Correctional Complex,**

Defendants.

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

On February 19, 2016, the *pro* se Plaintiff, Randy Cordle, filed this civil rights

matter pursuant to 42 U.S.C. § 1983 against the above-named defendants raising Due

Process and Eighth Amendment violations. On March 8, 2016, the Plaintiff was granted

leave to proceed *in forma* pauperis, and on April 29, 2016, he paid the required initial

partial filing fee. On August 25, 2016, the undersigned conducted an initial review of the

Plaintiff's complaint and found that to the extent the Plaintiff may have raised a viable

constitutional claim against the Defendants employed at Mount Olive Correctional Complex ("MOCC"), this Court lacks jurisdiction to entertain the same because MOCC is located within the jurisdiction of the Southern District of West Virginia. However, with respect to the remaining named Defendants, the undersigned determined that summary dismissal was not warranted and summonses were issued for Rubenstein, Pszczolkowski, Greyhouse, McGlochlin, Adams, and Dale Griffith.  In addition, because the Plaintiff had yet to provide the Court with the identity of the Jane Does, he was given an additional 30 days in which to identify the two Jane Does.

On September 23, 2016, Adams, Greathouse[1], Griffith, Pszczolkowski and Rubenstein filed a Motion to Dismiss. ECF No. 30. On September 23, 2016, McGlochlin filed a Motion to Dismiss. ECF No. 32. On September 26, 2016, a Roseboro Notice was issued as to each of these motions. ECF No. 45.

On September 23, 2016, the Plaintiff filed a Motion to Substitute Party. ECF No. 34. On January 11, 2017, the motion was granted, and Amanda Sabatino, LPN, was substituted as the Jane Doe Nurse, and the Clerk was directed to issue a summons for said Defendant. On February 17, 2017, Sabatino filed a Motion to Dismiss for Failure to State a Claim. ECF No. 58.

On January 30, 2017, the Plaintiff filed a Response to the Motion to Dismiss filed by Adams, Greathouse, Griffith, Pszczolkowski and Rubenstein [ECF No. 52] as well as a Response to the Motion to Dismiss filed by McGlochlin. ECF No. 53. On February 6, 2017, Adams, Greathouse, Pszczolkowski, Griffith and Rubenstein filed a Reply. ECF No. 54.

---

[1] The Plaintiff erroneously spelled James Greathouse's name in his complaint as "James Greyhouse."

On February 17, 2017, Sabatino filed a Motion to Dismiss. ECF No. 57. On March 6, 2017, the Plaintiff filed a Response [ECF No. 59], and on March 15, 2017, the Plaintiff filed a Reply. ECF No. 60.

This matter is now before the undersigned United States Magistrate Judge for Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636b)(1)(B).

## II. <u>CONTENTIONS OF THE PARTIES</u>

### A.  The Complaint

According to his complaint, the Plaintiff was sentenced in the Circuit Court of Mercer County on April 15, 2014, to a term of 10 to 20 years. The Plaintiff alleges that prior to his incarceration, he worked as a police officer for approximately 17 years. He maintains that he arrived at Mount Olive Correctional Center ("MOCC") on April 17, 2014, and upon his arrival he requested that he be placed in protective custody to avoid being attacked by other prisoners because of his law enforcement service. The Plaintiff also maintains that in July of 2014, a special management hearing was conducted which determined that there was sufficient verifiable information to warrant placement in special management. The Plaintiff notes that he never received any documentation related to the special management hearing, but he was transferred to the Northern Correctional Facility ("NCF") on August 1, 2014. However, the Plaintiff alleges that upon arriving at NCF, he realized he was not in special management but was, instead, housed in the general population as a mainline inmate.[2]

---

[2] The undersigned notes that Policy Directive 326.03 Special Management Status," referenced by the Plaintiff provides that the "Northern Regional Jail and Correctional Facility (Level V) is designated as a Special Management Facility for male Division of Corrections' inmates who can be reintegrated into the general population."

The Plaintiff continues his complaint by alleging that other inmates learned of his prior service as a police officer and began to harass and threaten him. The Plaintiff alleges that on or about July 3, 2015, an inmate began harassing him and threatening him in his housing unit and in the presence of McGlochlin. The Plaintiff alleges that McGlochlin failed to intervene even after the other inmate threated to assault him. The Plaintiff alleges the other inmate then proceeded to attack him in so vicious a manner that he was knocked unconscious, molars in the rear of his mouth were shattered and broken off at the gum line, and he suffered protein splatter inside his eyes which has impaired his vision. In addition, the Plaintiff alleges that he suffered hearing damage and a shoulder injury. The Plaintiff claims that once he regained consciousness, he was handcuffed an escorted to an interview room. He alleges that his injuries where then photographed, and he was taken to medical where Sabatino screened his injuries. The Plaintiff maintains that despite complaining of extreme oral and dental pain, blurred vision, ringing in his ears, pain in his left shoulder, memory loss, head pain, and the fact that she could see the broken molars, Sabatino did not treat his injuries or order him taken to the hospital, and he was sent back to his cell.

The Plaintiff continues by noting that on July 9, 2015, he was seen by an eye doctor at NCF, who indicated that he saw spots on the back of his left eye and ordered that he be seen by a specialist no later than July 14, 2015. However, the Plaintiff alleges he was not taken to an eye specialist until August 31, 2015, who observed protein splatters in the rear of his left eye. The Plaintiff maintains that this injury is consistent with being struck with extreme force and is likely to cause him blurred vision.

The Plaintiff alleges that on July 25, 2015, he saw the prison dentist.  The dentist determined that removing the Plaintiff's shattered teeth was too complicated for his practice and that the Plaintiff needed to see an oral surgeon.  The dentist attempted to apply a filling to the Plaintiff's exposes nerves.  The Plaintiff saw the oral surgeon on September 28, 2015.

Finally, with respect to his injuries, the Plaintiff alleges that as of the date he prepared his complaint, despite submitting multiple nurse sick calls trying to receive treatment for his shoulder, he has not been treated. For relief, the Plaintiff seeks nominal damages, compensatory damages, punitive damages, costs and attorney fees, and a declaration that the acts and omissions contained in the complaint violated his constitutional rights.

### B.  Motion to Dismiss by Rubenstein, Pszczolkowski, Greathouse, Adams, and Griffith

In support of their motion to dismiss, these Defendants allege that the complaint is void of any references to either Rubenstein or Pszczolkowski. In addition they argue that the claims against these two defendants must be dismissed because there is no supervisory liability in a §1983 action. With regard to Greathouse, Adams and Griffith, these defendants argue that no conduct is alleged which would rise to the level of a constitutional tort. Finally, these defendants allege that each is protected by the doctrine of qualified immunity.

### C.  Plaintiff's Response

In response, the Plaintiff alleges that individuals at the MOCC determined that pursuant to West Virginia Division of Corrections Policy Directive 326.03 "special

management status," there was sufficient verifiable information to warrant his placement in special management. The Plaintiff contends that Greathouse, Adams and Griffith had access to his file from MOCC, and were therefore deliberately indifferent to a known risk of injury when they allowed him to be placed in the general population at NCF. In addition, the Plaintiff alleges that Adams conducted an improper special management hearing by himself, without a special management committee and then denied him protection all of which violated the procedures outlined in WVDOC PD 326.03. Finally, the Plaintiff alleges he has stated a viable claim for denial of medical care under the Eighth Amendment. More specifically, the Plaintiff argues that his complaint alleges that as a result of the attack, his rear molars were shattered and broken off at the gum line, and that he was in extreme pain as a result of this obviously serious injury. The Plaintiff further argues that despite submitting multiple sick calls seeking treatment for his shattered teeth, he was not seen by a dentist until July 25, 2015, and it was not until September 28, 2015, that he was finally transported to an oral surgeon. In light of the fact that he was forced to suffer through shattered teeth with exposed dental nerves for almost three months, the Plaintiff maintains that Adams, Griffith, Rubenstein, Pszczolkowski, Nurse Jane Doe and Medical Services Coordinator Jane Doe were deliberately indifferent to his serious medical needs, and he has stated a claim upon which relief can be granted.

### D. Reply by Rubenstein, Pszczolkowski, Greathouse, Adams, and Griffith

Rubenstein and Pszczolkowski argue that the Plaintiff failed to address any of the arguments advanced by them in the motion to dismiss, and that while their dismissal is appropriate on the merits of the arguments they asserted in their motion, dismissal is

also appropriate because of the Plaintiff's failure to respond. In addition Greathouse, Adams and Griffith again argue that the complaint fails to state sufficient detail to allege a claim for relief, and even if it did, they are entitled to qualified immunity. Finally, all of these defendants again allege that the factual basis of the complaint does not state a claim under the Eighth or Fourteenth Amendments to sustain a failure to protect claim or deliberate indifference with respect to medical care.

### E.  Motion to Dismiss by McGlochlin

In support of his motion to dismiss, McGlochlin alleges that the Plaintiff's allegations against her do not rise to the level of deliberate indifference and are insufficient to substantiate a §1983 claim. More specifically, McGlochlin alleges that the Plaintiff merely alleges that she did not immediately intervene after witnessing an inmate threaten and harass him. Accordingly, McGlochlin alleges that, at best, the Plaintiff alleges that she made a mistake, which is not actionable in this context.  In addition, McGlochlin alleges that she is entitled to qualified immunity. Finally, McGlochlin alleges that the Plaintiff failed to exhaust administrative remedies with regard to any claims against her, and therefore, all claims against her must be dismissed.

### F.  Response by Plaintiff

In response, the Plaintiff alleges that McGlochlin was approximately 10 to 20 feet from him and his attacker, while his attacker was harassing and threatening him. Accordingly, the Plaintiff argues that McGlochlin had actual knowledge of an excessive risk to his safety and was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed. Accordingly, the Plaintiff argues that his allegations against McGlochlin rise to the level of deliberate indifference. The Plaintiff

further argues that this deliberate indifference prevents McGlochlin from the protection of qualified immunity. Finally, the Plaintiff alleges that he has exhausted his available administrative remedies, and the mere fact that he did not name McGlochlin in his grievances, does not render his claims against her unexhausted.

### G.  Motion to Dismiss by Sabatino

In support of her motion, Sabatino contends that the Plaintiff failed to exhaust his administrative remedies with respect to any allegations against her. Sabatino acknowledges that the Plaintiff filed two grievances, each dated September 21, 2015, many days after his contact with her on July 3, 2015. As noted by Sabatino, in the first grievance, the Plaintiff requests that he be referred to an outside oral surgeon.  The second grievance request that get his shoulder fixed. Sabatino argues that neither grievance complains about Jane Doe, Nurse or Amanda Sabatino, LPN, and his alleged lack of care at her hands. Accordingly, Sabatino argues that the Plaintiff failed to exhaust his administrative remedies before filing his complaint, and the complaint as it relates to her should be dismissed.  In addition, Sabatino argues that the complaint falls far short of stating sufficient facts to support a claim for relief under the Eighth Amendment for ineffective medical assistance due to deliberate indifference.

### H.  Plaintiff's Response

In his reply, the Plaintiff argues that he has exhausted his administrative grievances with respect to all Defendants. Citing Jones v. Bock, 549 U.S. 199 (2007), the Plaintiff specifically notes that the United States Supreme Court has ruled that the Prisoner Litigation Reform Act ("PLRA") does not require that a prisoner name each individual defendant during the grievance process.   Moreover, the Plaintiff alleges it is

undisputed that Sabatino screened him on July 3, 2015, and among his injuries, she observed shattered molars and exposed nerves but failed to have him transported to the local hospital to have his extreme injuries treated. Accordingly, the Plaintiff contends that Sabatino showed deliberate indifference to a serious medical need in violation of the Eighth Amendment.

### I. Sabatino's Reply

In reply, Sabatino reiterates her argument that the Plaintiff has not exhausted his administrative remedies with respect to any allegations against her. In addition, Sabatino again argues that the Plaintiff has failed to establish that her actions on July 3, 2015, constitute deliberate indifference to a serious medical need.

### III. STANDARD OF REVIEW

#### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted.  The Federal Rules of Civil Procedure require only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99 (1957)). Courts long have cited "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285 (1976); Haines v.

Kerner, 404 U.S. 519, 520 - 1, 92 S.Ct. 594, 596 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Haines, supra, at 520–21. "[T]he mandated liberal construction afforded to pro se pleadings 'means that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir.1999). However, "judges are [ ] not required to construct a party's legal arguments for him." Small v. Endicott, 998 F.2d 411, 417 - 8 (7th Cir.1993).

Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. *at 555, 570.* In Twombly, the Supreme Court found that "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id. at 570.* Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation.  Id. at 678.  "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679. Thus, a well-pleaded complaint  must offer more than "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses."  Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." Alternative Energy. Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir.2001) (cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir.2006) (unpublished)).  There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint.   "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss,

in particular documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S.Ct. 2499, 2509 (2007).

**B. 42 U.S.C. § 1983**

42 U.S.C.§ 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage.....subjects, or causes to be subjected, any citizen of the United States...to the deprivation of any rights...secured by the Constitution and laws, shall be liable to the party injured in any action at law...or suit in equity.

Therefore, the initial inquiry in a § 1983 case is as follows: (1) was the conduct complained of committed by a person acting under the color of state law and (2) did that conduct deprive the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. See Hale v. Tallapoosa County, 50 F.3d 1579 (11th Cir. 1995); Harvey v. Harvey, 949 F. 2d 1127, 1130 (11th Cir. 1992).

Whether a constitutional right is alleged to have been violated is usually clear, but the under color of law requirement has been subject to more debate. "As a general rule, 'a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.'" Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50 (1988)); see also Lugar v. Edmonson Oil Co., Inc., 457 U.S. 922, 936 n.18 (1982) (finding that "state employment is generally sufficient to render the defendant a state actor"). Accordingly, any person acting with a badge of authority given to them by virtue of their position with the state who violates a person's constitutional rights is subject to liability for the

unconstitutional act.  See West, 487 U.S. at 49 (citing United States v. Classic, 313 U.S. 299, 326 (1941)); see also Monroe v. Pape, 365 U.S. 167, 187 (1961).

# IV.    ANALYSIS

## A.    Defendants Rubenstein and Plumley

In his complaint, the Plaintiff names James Rubenstein in his capacity as the Commission of the WVDOC and Karen Pszczolkowski in her capacity as the Warden of the Northern Correctional Facility. However, aside from naming them as defendants, the Plaintiff makes no specific reference to either in the body of his complaint and most certainly fails to allege any personal involvement on their part in the alleged violations of his constitutional rights. The Plaintiff does, however, allege "supervisory liability" as his third claim.

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution. As stated by the Fourth Circuit, because there is no respondeat superior liability under § 1983, supervisory liability lies only "where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." Vinnedge v. Gibbs, 550 F. 2d 926, 928 (4th Cir. 1997) (citing Bennett v. Gravelle, 323 F.Supp. 203, 214 (D. Md. 1971) aff'd 451 F.2d 1011 (4th Cir. 1971); Harris v. City of Virginia Beach, 11 Fed. Appx. 212, 215 (4th Cir. 2001).  Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible.  Fisher v. Washington Metropolitan Area Transit Authority, 690

F. 2d 1133 (4th Cir. 1982) (abrogated on other grounds by <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44 (1991)).

In order to succeed on a §1983 claim for supervisory liability, a plaintiff must show:

(1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff,

(2) that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and

(3) that there was an 'affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Wilkins v. Montgomery</u>, 751 F.3d 214, 226 (4th Cir. 2014) (internal citations omitted).

A Plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses," however, a plaintiff claiming deliberate indifference "assumes a heavy burden of proof." <u>Shaw</u>, 13 F.3d at 799. "Causation is established when the plaintiff demonstrates an "affirmative causal link" between the supervisor's inaction and the harm suffered by the plaintiff." <u>Id.</u>

Here, it clear that the Plaintiff has failed to allege facts which would sustain a finding of supervisory liability. The Plaintiff does not allege any causal link between either Rubenstein or Pszczolkowski and any alleged failure to protect or deliberate indifference to a serious medical need.  Accordingly, it is clear that the Plaintiff has simply named these two defendants in their official capacities as Commissioner and Warden. The undersigned finds that Plaintiff's claims against the Defendants in their official capacities are improper. A defendant in a Section 1983 action must be a "person" acting under color of state law. 42 U.S.C. § 1983. However, "neither a State

nor its officials acting in their official capacities are "persons" under [Section] 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Therefore, Plaintiff's claims against Rubenstein and Pszczolkowski should be dismissed.

### B. Defendants Greathouse, Adams, and Griffith

The Plaintiff argues that Defendants Greathouse, Adams, and Griffith failed to protect him, violated his Due Process rights, and were deliberately indifferent to his serious medical need. As discussed below, the undersigned finds that the Plaintiff has failed to state a claim for either theory, and the complaint as it relates to these three defendants should be dismissed.

#### 1. Failure to Protect

The Eighth Amendment imposes a duty on prison officials "'to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quoting Cortes-Quinones v. Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Thus, prison officials "must take reasonable measures to guarantee the safety of the inmates." Id. at 833. "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that prison officials acted with "'deliberate indifference' to inmate health or safety." Id. An official is not liable under the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

The Plaintiff has failed to plead that the Defendants were actually aware of this risk as required by the deliberate indifference standard.   Indeed, below are the only mentions of these three Defendants in the Plaintiff's pleadings:

- After the altercation Defendant Greathouse interviewed him and told the Plaintiff "I'm going to review the videotape and if you did anything, I'm going to lock you up." ECF No. 1 at 11.

- On July 24, 2015, Defendants Adams and Griffith told the Plaintiff he would see a dentist on July 25, 2015.  The Plaintiff did indeed see a dentist on July 25, 2015. *Id.* at 12.

- Sometime in September 2015 (after the altercation) Defendant Adams conducted a hearing and denied the Plaintiff's request for special management. *Id.* at 13.

- The Defendants had access to the Plaintiff's inmate file which demonstrated that he should not be mixed with general population inmates.  ECF No. 52 at 7.

The Plaintiff's first three allegations concerning these Defendants only involve conduct *after* the altercation.  Thus, the Plaintiff has failed to allege that these three Defendants were subjectively aware of a risk *before* the altercation.  Moreover, the Plaintiff's fourth allegation regarding these Defendants only alleges that they **should have** been aware that he was in danger and not that they actually were aware.

2.    Due Process

The Plaintiff argues that the Defendants deprived him of Due Process by failing to protect him.  However, the only allegation that the Plaintiff makes regarding these three Defendants *before* the attack is that they had access to his file and should have been aware of the risk of serious danger.  Therefore, the Plaintiff essentially alleges that the Defendants were negligent in failing to check his file.  However, "the Due Process

Clause simply is not implicated by a **negligent act** of an official causing unintended loss of or injury to life, liberty, or property.  Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986) (emphasis original).

### 3.     Deliberate Indifference to a Serious Medical Need

The Plaintiff argues that the Defendants were deliberately indifferent to his serious medical need and thereby violated his Eighth Amendment right.   In order to state a claim that non-medical personnel, such as these Defendants, were deliberately indifferent to a serious medical need, the Plaintiff must show that "the [officials were] personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct."   Kinder v. PrimeCare Med., Inc., No. CIV.A. 3:13-31596, 2015 WL 1276748, at *8 (S.D.W. Va. Mar. 19, 2015) (citing Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990) (abrogated on other grounds)).

As discussed in above, the Plaintiff only makes four allegations concerning these Defendants.   Only one of these four claims relates to his medical care—on July 24, 2015, Defendants Adams and Griffith told him he would see a dentist the next day.   The Plaintiff did in fact see a dentist the next day.   Therefore, the Plaintiff has failed to meet the standard articulated in Kinder regarding Defendants Greathouse, Adams, and Griffith.

## C.     Defendants McGlochlin and Sabatino

The Plaintiff alleges that Defendant McGlochlin failed to protect him from another inmate who assaulted him in her presence.   Defendant McGlochlin argues that the Plaintiff failed to state a claim for failure to protect, she is entitled to qualified immunity,

and the Plaintiff failed to exhaust his administrative remedies.   With respect to Defendant Sabatino, the Plaintiff alleges that she was deliberately indifferent to his serious medical needs. Sabatino argues that because the Plaintiff failed to exhaust his administrative grievances with respect to her actions, she is entitled to dismissal. In addition, she argues that the Plaintiff has failed to state a viable claim of deliberate indifference. As detailed below, the undersigned finds that the Plaintiff failed to exhaust his administrative grievances with respect to either McGlochlin or Sabatino, and accordingly the complaint should be dismissed against each.

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies.   42 U.S.C. § 1997(e)(a).   The United States Supreme Court has found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons;" (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case;" and (3) to "reduce the quantity and improve the quality of prisoner suits." Porter v. Nussle, 534 U.S. 516, 532 (2002) (citing Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion as provided in § 1997(e)(a) is mandatory.   Booth, 532 U.S. at 741 The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they alleges excessive force or other some wrong and is required even when the relief sought is not available.   Porter, 534 U.S. at 532 (2002).   Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted prior to

filing a complaint in federal court.  *See* <u>Porter</u>, at 524 (citing <u>Booth</u>, 532 U.S. at 741) (emphasis added). Not only must a prisoner exhaust his administrative remedies, he must also do so properly. Proper exhaustion "'means using all steps that the agency holds out, and doing so <u>properly</u> (so that the agency addresses the issues on the merits.'" <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006) (quoting <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002). [Emphasis in the original.])

An inmate's failure to exhaust remedies under the PLRA is an affirmative defense; the inmate need not demonstrate in his complaint that he has exhausted applicable remedies. <u>Jones v. Bock</u>, 549 U.S. 199 (2007). <u>Jones</u> also held that an inmate does not automatically fail to exhaust when the inmate sues one or more defendants not named in the pertinent grievances. <u>Id.</u> at 218. If a complaint contains claims, some of which have been exhausted, and some of which have not been exhausted, the entire complaint is not dismissed; the court proceeds only on the exhausted claims. <u>Id.</u>, at 219-22.

In the instant matter, the Plaintiff attached to his complaint two grievances, each initiated on September 8, 2015, more than two months after the alleged attack by another inmate occurred. These grievances do not address any issues with respect to any defendants failure to protect him from the assault which occurred on July 3, 2015. In fact, other than a reference, to being "sucker punched" [ECF No. 1-2 at 3], neither grievance makes any reference to the July 3, 2015, assault or the events leading up to the assault.  Therefore, it is clear that the Plaintiff failed to exhaust his administrative remedies with respect to his allegation that McGlochlin failed to provide adequate protection.

In addition, the undersigned notes that both grievances address "medical issues." The first grievance requests that he be sent to an outside oral surgeon to have teeth cut out and replaced. ECF No. 1-1 at 2. The second grievance asks to get his shoulder fixed. ECF No. 1-2 at 2. However, neither grievance addresses any claim regarding his medical evaluation on the date of the assault or any failure to provide treatment immediately following the incident.   Therefore, the Plaintiff has not exhausted any grievance with respect to his claim against Sabatino and his allegations that she was deliberately indifference to his medical needs on July 3, 2015, the only date he references her in the complaint.

The undersigned acknowledges that despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several circuit courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request).   Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no

fault of his own, was prevented from availing himself of it." <u>Moore v. Bennette</u>, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. <u>See, e.g.</u>, <u>Turner v. Burnside</u>, 541 F.3d 1077, 1085 (11th Cir. 2008); <u>Kaba v. Stepp</u>, 458 F.3d 678, 686 (7th Cir. 2006); <u>Hemphill v. New York</u>, 380 F.3d 680, 688 (2d Cir. 2004).  <u>But see</u> <u>Larkin v. Galloway</u>, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation).  For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies.  <u>See</u> <u>Turner</u>, 541 F.3d at 1085; <u>Kaba</u>, 458 F.3d at 684-86; <u>Hemphill</u>, 380 F.3d at 688.

Here, Plaintiff has made no claim that prison officials prevented him from exhausting his administrative remedies. Furthermore, he makes no claim that prison officials threatened him with violence to discourage him from filing grievances. In fact, Plaintiff offers no justification whatsoever to explain why he failed to exhaust administrative remedies regarding his claims regarding failure to protect or deliberate indifference to his medical needs by any medical personnel on the date of the incident. Accordingly, the complaint as it relates to McGlochlin and Sabatino should be dismissed without prejudice for failure to exhaust administrative remedies.[3]

---

[3] The undersigned notes that despite asserting the affirmative defense of failure to exhaust, these Defendants have also addressed the merits of the Plaintiff's claims. The undersigned has declined to do so in light of the purpose of requiring exhaustion as outlined in <u>Woodford</u>. 548 U.S. at 84-85.

## IV.    RECOMMENDATION

For the foregoing reasons, the Court recommends that:

1.    Defendants Rubenstein, Pszczolkowski, Greathouse, Adams, and Griffith's Motion to Dismiss [ECF No. 30] be **GRANTED**;

3.   Defendant McGlochlin's Motion to Dismiss [ECF No. 32] be **GRANTED**;

4.   Defendant Sabatino's Motion to Dismiss [ECF No. 57] be **GRANTED**;

5.   The Plaintiff's complaint be **DISMISSED WITH PREJUDICE**   against Rubenstein, Pszczolkowski, Greathouse, Adams and Griffith for failure to state a claim upon which relief may be granted and be **DISMISSED WITHOUT PREJUDICE** against McGlochlin and Sabatino for failure to exhaust administrative remedies; and

6.   The Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE** against the Mount Olive Correction Complex Defendants: David Ballard, Mike Neese, Cheryl Chandler and Sherrill Snyder for lack of jurisdiction.

.

Within fourteen days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections.   A copy of any objections shall also be submitted to the United States District Judge.   Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known

address as shown on the docket and provide a copy to all counsel of record via electronic means. The Clerk is further **DIRECTED** to terminate the Magistrate Judge association with this case until further order of the District Judge.

DATED: July 31, 2017

*/s Michael John Aloi*

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE